**KINGSLEY & KINGSLEY, APC**
ERIC B. KINGSLEY, Esq., Cal. Bar No. 185123
eric@kingsleykingsley.com
KELSEY M. SZAMET, Esq., Cal. Bar No. 260264
kelsey@kingsleykingsley.com
DAVID KELEDJIAN, Esq., Cal. Bar No. 309135
davidk@kingsleykingsley.com
16133 Ventura Blvd., Suite 1200
Encino, CA 91436
Telephone: (818) 990-8300
Fax: (818) 990-2903

**DAVTYAN PROFESSIONAL LAW CORPORATION**
EMIL DAVTYAN, Esq. (SBN-299363)
emil@davtyanlaw.com
5959 Topanga Canyon Blvd., Suite 130
Woodland Hills, CA 91367
Tel: (818) 722-3974/Fax: (818) 722-3974

Attorneys for Plaintiff and the Proposed Class

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM CAPUT, an individual, on behalf of himself and others similarly situated<br><br>PLAINTIFF,<br><br>v.<br><br>NTT SECURITY (US) INC.; and DOES 1 thru 50, inclusive,<br><br>DEFENDANTS. | CASE NO.  2:18-CV-09436-PA-GJS<br><br>[Case Assigned for All Purposes to Hon. Percy Anderson]<br><br>**NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Hearing Date:  December 9, 2019<br>Time:         1:30 p.m.<br>Courtroom.:    9A, 9th Floor<br>Judge:         Hon. Percy Anderson<br><br>Complaint Filed:   November 6, 2018 |

**TO THE COURT AND TO ALL PARTIES:**

PLEASE TAKE NOTICE that on December 9, 2019, at 1:30 p.m., in the above-entitled Court located at the First Street Courthouse, 350 West First Street, Courtroom 9A, 9th Floor, Los Angeles, California 90012, Plaintiff WILLIAM CAPUT, an individual ("Plaintiff"), on behalf of himself, and on behalf of all persons similarly situated, through his attorneys of record ("Class Counsel"), and Defendant NTT SECURITY (US) INC. ("Defendant"), through its attorneys of record, will and hereby do, move this Court for an order granting final approval of a proposed class action settlement. Plaintiff and Defendant are referred to collectively as the "Parties". The terms of the settlement are contained within the Parties' Class Action Settlement Agreement and Release ("Settlement" or "Settlement Agreement"), which is concurrently submitted as Exhibit 1 to the Declaration of Kelsey M. Szamet.

This motion will be made on the grounds that the proposed Class Settlement is fair, adequate, reasonable, and in the best interest of the Class and the Parties. This motion is based on this Notice and accompanying Memorandum of Points and Authorities, the Declarations of Kelsey M. Szamet, William Caput, Rust Consulting, the Settlement Agreement, all other papers and records on file in this action, and on such further evidence as may be presented at the hearing.

DATED: November 4, 2019           KINGSLEY & KINGSLEY, APC

By: _____
KELSEY M. SZAMET
Attorneys for Plaintiff WILLIAM CAPUT
and the proposed classes

# TABLE OF CONTENTS

I.  INTRODUCTION ........................................................................... 1

II.  RELEVANT PROCEDURAL HISTORY ......................................... 1

III.  SUMMARY OF THE SETTLEMENT'S TERMS .......................... 4

    A.  The Settlement Class ........................................................... 4

    B.  Monetary Recovery .............................................................. 5

    C.  The Release by Class Members ............................................ 5

    D.  The Settlement Administration Process ............................... 6

IV.  THE COURT SHOULD ORDER FINAL APPROVAL OF THE
     SETTLEMENT ....................................................................... 7

    A.  The Strength of Plaintiff's Case ........................................... 8

    B.  The Risk, Expense, Complexity, and Likely Duration of Further
       Litigation ............................................................................ 13

    C.  The Risk of Maintaining Class Action Status Through Trial ............. 14

    D.  The Amount Offered in Settlement ..................................... 14

    E.  The Extent of Discovery Completed, and the Stage of the Proceedings
       .......................................................................................... 15

    F.  The Experience and Views of Counsel ................................ 16

    G.  The Reaction of the Class Members to the Proposed Settlement ....... 17

    H.  The Parties Arrived at the Settlement Through Arm's Length
       Negotiations with the Assistance of a Respected Mediator ............... 17

V.  THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS ............ 17

    A.  All Four FRCP 23(a) Criteria are Met .................................. 18

    B.  The FRCP 23(b)(3) Criteria are Met .................................... 21

VI.  CONCLUSION ........................................................................... 22

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

# TABLE OF AUTHORITY

**Page(s)**

## Federal Cases

*Alberto v. GMRI, Inc.*,
   252 F.R.D. ................................................................................................ 18

*Bercut v. Michaels Stores Inc.*,
   No. 17-CV-01830-PJH, 2017 WL 2807515 (N.D. Cal. June 29, 2017) ........ 10, 11

*Churchill Vill., LLC v. Gen. Elec.*,
   361 F.3d 566 (9th Cir. 2004) ................................................................... 8

*City of Detroit v. Grinnell Corp.*,
   495 F.2d 448 (2d Cir. 1974) ..................................................................... 15

*Cunha v. IntelliCheck, LLC*,
   254 F.Supp.3d 1124 (N.D. Cal. May 26, 2017) ...................................... 10

*Demmings v. KKW Trucking, Inc.*,
   No. 14-CV-494, 2017 WL 1170856 (D. Or. Mar. 29, 2017) ...................... 10

*Dunleavy v. Nadler (In re Mego Fin. Corp. Sec. Litig.)*,
   213 F.3d 454 (9th Cir. 2000) ................................................................. 13

*Dyson v. Sky Chefs, Inc.*, No. 3:16-CV-3155-B,
   2017 WL 2618946 (N.D. Tex. June 16, 2017) ...................................... 10

*Fisher v. Enterprise Holdings, Inc.*,
   No. 15-CV-00372, 2016 WL 4665899 (E.D. Mo. Sept. 7, 2016) .................. 10

*Groshek v. Time Warner Cable, Inc.*,
   865 F.3d 884 (7th Cir. 2017) ................................................................. 10

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ....................................................... 18, 19, 20, 21

*Hillson v. Kelly Services*,
   E.D. Mich. No. 2:15cv10803, 2017 WL 279814 (E.D. Mich. Jan. 23,
   2017) ................................................................................................ 14, 15

*In re Immune Response Sec. Litig.*,
   497 F. Supp. 2d 1166 (S.D. Cal. 2007) ................................................. 15

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

*In re Michaels Stores, Inc., Fair Credit Reporting Act (FCRA) Litigation*,
   MDL No. 2615, 2017 WL 354023 (D.N.J. Jan. 24, 2017) .................................. 10

*In re Monumental Life Ins. Co.*,
   365 F.3d 408 (5th Cir. 2004) ...................................................................... 12

*In re Ocwen Loan Servicing LLC Litig.*,
   No. 3:16–cv–00200–MMD–WGC, 2017 WL 1289826 (D. Nev. Mar. 3, 2017) ...................................................................................................... 10

*In re Syncor ERISA Litig.*,
   516 F.3d 1095 (9th Cir. 2008) ...................................................................... 7

*In re Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Litig.*,
   229 F. Supp. 3d 1052 (N.D. Cal. 2017) ......................................................... 16

*In re Wells Fargo Home Mortg. Overtime Pay Litigation*,
   571 F.3d 953 (C.A.9 2009) .......................................................................... 21

*In re Wells Fargo Home Mortgage Overtime Pay Litig.*,
   527 F. Supp.2d 1053 (N.D. Cal. 2007) ......................................................... 21

*LaFollette v. RoBal, Inc.*,
   No. 1:16-CV- 2592-WSD, 2017 WL 1174020 (N.D. Ga. Mar. 30, 2017) .......... 10

*Landrum v. Blackbird Enters., LLC*,
   214 F. Supp. 3d 566 (S.D. Tex. 2016) ........................................................... 10

*Linney v. Cellular Alaska P'ship*,
   151 F.3d 1234 (9th Cir. 1998) ...................................................................... 15

*Local Joint Executive Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*,
   244 F.3d 1152 (9th Cir) ......................................................................... 21, 22

*Mazza v. Am. Honda Motor Co.*,
   666 F.3d 581 (9th Cir. 2012) ........................................................................ 12

*Meza v. Verizon Commc'ns, Inc.*,
   No. 1:16-CV-0739 AWI MJS, 2016 WL 4721475 (E.D. Cal. Sept. 9, 2016) ...................................................................................................... 10

*Milbourne v. JRK Residential Am., LLC*,
   No. 3:12CV861, 2016 WL 1071569 (E.D. Va. Mar. 15, 2016) .......................... 18

iii

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

*Milbourne v. JRK Residential Am.*, LLC,
    No. 3:12CV861, 2016 WL 1071570 (E.D. Va. Mar. 15, 2016) .......................... 11

*Mitchell v. Winco Foods, LLC*,
    No. 1:16-CV-00076-BLW, 2017 WL 5349539 (D. Idaho Nov. 13, 2017)... 10, 11

*Mix v. Asurion Ins. Servs. Inc.*,
    No. CV-14-02357, 2016 WL 7229140 (D. Ariz. Dec. 14, 2016)....................... 10

*Moore v. Rite Aid Headquarters Corp.*,
    No. 13–1515, 2015 WL 3444227 (E.D. Pa May 29, 2015)................................. 18

*Nunez v. BAE Systems San Diego Ship Repair, Inc.*,
    292 F. Supp. 3d 1018 (S.D. Cal. 2017)........................................................ 16, 17

*Officers for Justice*,
    688 F.2d 615 (9th Cir. 1982) .................................................................. 7, 15, 17

*Pac. Enters. Sec. Litig.*,
    47 F.3d 373 (9th Cir. 1995) ........................................................................... 16

*Phillips Petroleum Co. v. Shutts*,
    472 U.S. 797, (1985)..................................................................................... 22

*Quintero v. Mulberry Thai Silks, Inc.*,
    No. 08-2294, 28 I.E.R. Cas. (BNA) 607, 2008 U.S. Dist. LEXIS 84976, at
    *7 (N.D. Cal. Oct. 22, 2008) ......................................................................... 18

*Saltzberg v. Home Depot, U.S.A., Inc.*,
    No. CV1705798RGKAKX, 2017 WL 4776969 (C.D. Cal. Oct. 18, 2017)........ 10

*Shoots v. iQor Holdings US Inc.*,
    No. 15-CV-563 (SRN/SER), 2016 WL 6090723 (D. Minn. Oct. 18, 2016)....... 10

*Slezak v. City of Palo Alto*,
    2017 WL 2688224 (N.D. Cal. June 22, 2017)................................................... 16

*Smith v. Ohio State Univ.*,
    191 F. Supp. 3d 750 (S.D. Ohio 2016) ........................................................... 10

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003) ......................................................................... 19

*Syed v. M-I, LLC*,
    853 F.3d 492 (9th Cir. 2017) ........................................................... 8, 9, 10, 11

iv

*Terrell v. Costco Wholesale Corp.*,
  No. C16–1415JLR, 2017 WL 951053 (W.D. Wash. Mar. 10, 2017).................. 10

*Thorn v. Jefferson-Pilot Life Ins. Co.*,
  445 F.3d 311 (4th Cir. 2006) ............................................................................ 12

*Van Bronkhorst v. Safeco Corp.*,
  529 F.2d 943 (9th Cir. 1976) ................................................................. 7, 13, 14

*Wirt v. Bon-Ton Stores, Inc.*,
  134 F. Supp.3d 852 (M.D. Pa. 2015) ............................................................... 18

## Federal Statutes

15 U.S.C. § 1681 ....................................................................................................... 1

15 U.S.C. § 1681(b)(2)(A)(i) and (ii) ........................................................................ 9

15 U.S.C. § 1681b ..................................................................................................... 6

15 U.S.C. § 1681b(b)(2)(A) ............................................................................. 8, 9, 10

15 U.S.C. § 1681b(b)(2)(A)(i) ..................................................................... 2, 10, 19

15 U.S.C. § 1681b(b)(2)(A)(ii) ............................................................................ 2, 10

15 U.S.C. § 1681n ..................................................................................................... 9

15 U.S.C. § 1681n(a) .............................................................................................. 14

15 U.S.C. § 1681n(a)(1) .......................................................................................... 11

15 U.S.C. § 1681p .............................................................................................. 2, 12

15 U.S.C. § 1681p (1)-(2) ....................................................................................... 18

15 U.S.C. § 1681p (2) ............................................................................................. 13

## State Statutes

Cal. Lab. Code § 203 ................................................................................................ 2

## Federal Rules

Fed. R. Civ. P. 23(a) .............................................................................................. 18

Fed. R. Civ. P. 23(a)(1) .......................................................................................... 18

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

Fed. R. Civ. P. 23(a)(2) ............................................................. 18

Fed. R. Civ. P. 23(a)(3) ............................................................. 19

Fed. R. Civ. P. 23(a)(4) ............................................................. 20

Fed. R. Civ. P. 23(b)(3) ............................................................. 21

Fed. R. Civ. P. 23(e) ...................................................... 7, 17, 21

Fed. R. Civ. P. 23(e)(1)(C) ........................................................... 7

**Other Authorities**

4 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* § 11.41
    (4th ed. 2002) ................................................................... 7

4 *Newberg on Class Actions* § 11.41 (4th ed. 2002 & Supp. 2008) ..... 13

*Manual for Complex Litigation* § 21.62 ....................................... 15

*Manual for Complex Litigation*, Fourth, § 21.6 at 309 (2004) ........... 7

*Quintero*,
    2008 U.S. Dist. LEXIS 84976, at *8 ...................................... 19

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION[1]

Plaintiff WILLIAM CAPUT, an individual ("Plaintiff"), on behalf of himself, and on behalf of all persons similarly situated, through his attorneys of record ("Class Counsel"), and Defendant NTT SECURITY (US) INC. ("Defendant"), through its attorneys of record, submit this proposed Class Action Settlement Agreement and Release regarding the allegations in Plaintiff's Complaint (the "Action"), which asserts claims under the Fair Credit Reporting Act, 15 U.S.C. § 1681, et seq. (the "FCRA").

The settlement terms are embodied in the Parties' fully-executed Class Action Settlement Agreement ("Settlement" or "Settlement Agreement"), which is concurrently submitted as Exhibit 1 to the Declaration of Kelsey M. Szamet at ¶ 5. (Szamet Dec.)

The Court preliminarily approved the Settlement on April 19, 2019. (ECF No. 34; Szamet Dec. ¶ 6).

As the Settlement satisfies all relevant standards for being deemed "fair, adequate and reasonable," the Parties ask the Court to: (1) grant final approval of the Settlement pursuant to the terms of the Settlement Agreement; (2) certify the proposed Settlement Class; and (3) enter judgment.  In addition, Plaintiff asks the Court to award attorneys' fees and costs as detailed in the concurrently filed Motion for Attorneys' Fees and Costs; award a class representative payment of $1,000.00 to Plaintiff WILLIAM CAPUT; and award administration costs of $7,500.00 to Rust consulting, Inc.

## II.    RELEVANT PROCEDURAL HISTORY

On November 6, 2018, Plaintiff filed a class action complaint in the United

---

[1]    Unless otherwise indicated, this motion for Final Approval of the Settlement uses the defined terms in the Settlement Agreement.

States District Court for the Central District of California, alleging three causes of action: (1) violation of the FCRA's disclosure requirement (15 U.S.C. § 1681b(b)(2)(A)(i)), (2) violation of the FCRA's authorization requirement (15 U.S.C. § 1681b(b)(2)(A)(ii)), and (3) a state law claim for waiting time penalties (Cal. Lab. Code § 203). (ECF No. 1; Szamet Dec. ¶ 7; Ex. 1 [Settlement Agreement], ¶ 2.)

On December 13, 2018, Plaintiff filed a notice of dismissal, without prejudice, of Plaintiff's state law claim under Cal. Lab. Code § 203. (Szamet Decl., ¶ 8; Ex. 1, ¶ 2.)

The operative Complaint contemplates two proposed classes based on the 2-year and 5-year statute of limitation periods for FCRA claims in 15 U.S.C. § 1681p:

> "all persons who are employed in the United States who filled out Defendant's disclosure and authorization form that included an authorization and a liability release clause at any time during the period beginning two (2) years prior to the filing of this Complaint and ending on the date as determined by the Court." (the "Proposed 2 Year FCRA Class")

> "all persons who are employed in the United States who filled out Defendant's disclosure and authorization form that included an authorization and a liability release clause at any time during the period beginning five (5) years prior to the filing of this Complaint and ending on the date as determined by the Court." (the "Proposed 5 Year FCRA Class")

(Complaint, ¶ 6.)

In his Complaint, Plaintiff alleges that Defendant failed to make proper disclosures as required under the FCRA because it allegedly included extraneous materials in its standardized disclosures, and thus failed to obtain proper authorizations regarding certain consumer report information it obtained about putative class members ("Class Members").[2]  (ECF No. 1; Szamet Dec. ¶ 9.)

---

[2]  "Class" means those individuals who are within the Settlement Class, each of

2

After the matter was at issue, the Parties engaged in discussions about their respective positions and the information and data needed to properly evaluate the merits of the claims alleged and potential liability flowing therefrom. (Szamet Dec. ¶ 10.)  On December 14, 2018, Plaintiff served written requests for production of documents and interrogatories and on February 4, 2019, Defendant provided written responses. (Szamet Dec. ¶ 11.)

Thereafter, the Parties engaged in good faith, arms-length negotiations and were able to reach a tentative settlement of the litigation on February 4, 2019, subject to finalization of a formal stipulation for resolution and the approval of the Court. (Szamet Dec. ¶ 12.)  The Parties have since engaged in extensive negotiations about the terms and conditions of the Settlement. (Szamet Dec. ¶ 13.)

Class Counsel has conducted an investigation of the law and facts relating to the claims asserted in the litigation and has concluded, taking into account the sharply contested issues involved, the expense and time necessary to pursue litigation of the matter through trial and any appeals, the risks and costs of further litigation, the risk of an adverse outcome, the uncertainties of complex litigation, and the substantial benefits to be received by the Plaintiff and the members of the Settlement Class pursuant to the Settlement Agreement, that a settlement with Defendant on the terms and conditions set forth in the Settlement Agreement is fair, just, reasonable, adequate, and in the best interests of the Settlement Class.  Plaintiff, on his own behalf and on behalf of the Settlement Class, has agreed to the proposed Settlement with Defendant on the terms set forth herein. (Settlement Agreement ¶ 8; Szamet Dec. ¶ 14.)

Discussions between counsel for the Parties, formal discovery, as well as the diligent investigation and evaluation of the claims of Plaintiff by the Parties, have permitted each side to assess the relative merits of the claims and the defenses to

_____

whom is a "Class Member."

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

those claims. Class Counsel reviewed Plaintiff's personnel file and wage statements, the background disclosure and consent form that Plaintiff signed, and for settlement purposes, Defendant provided estimates of the number of Class Members and the number of background checks conducted. (Szamet Dec. ¶ 15.)

Based on their own independent investigations and evaluations, Class Counsel is of the opinion that the consideration and terms of the Settlement as described herein, considering the risk of loss on class certification, the risk of loss on the merits, and the risk of a reduction in any damages sought or awarded, is fair, just, reasonable, and adequate in light of all known facts and circumstances, and is in the best interests of the Settlement Class. (Szamet Dec. ¶ 16.)

The Court granted preliminary approval of the proposed Settlement on April 19, 2019. (ECF No. 34; Szamet Dec. ¶ 17.)

Following preliminary approval, Class counsel coordinated with the Settlement Administrator to ensure the proper dissemination of the Class Notice and closely monitored the notice process. (Szamet Dec. ¶ 18.)

## III.    SUMMARY OF THE SETTLEMENT'S TERMS

### A.    The Settlement Class

The Settlement Class is defined as:

> "all individuals in the United States of America who filled out Defendant's Notice of Procurement of Consumer/Investigative Report Form permitting Defendant to obtain a consumer report verifying applicants' background and experience during the Class Period."

*See* Settlement at ¶1(x).

As of this filing, the Settlement Class includes 672 individuals. (*See* Lisa Pavlik Dec. ¶¶9, 14.) ("Pavlik Dec.")

The "Class Period" is November 6, 2013 to March 1, 2019. *See* Settlement, ¶ 1(f).

///

B.    <u>Monetary Recovery</u>

The Settlement provides a maximum recovery of $55,000.00 (the "Global Settlement Fund"). Settlement at ¶12(c). The following estimates the breakdown of payments from the Global Settlement Fund:

- $31,789.68 for estimated settlement funds to the Settlement Class (the "Net Settlement Fund");
- $7,500.00 for administration costs regarding the Settlement;
- $1,000.00 for a Service Award to Plaintiff; and
- $13,750.00 for attorneys' fees (25% of the Global Settlement Fund and $960.32[3] in actual litigation expenses for a total of $14,950.00 (the "Class Counsel Award").

(Settlement at ¶¶12(c), 12(h), and 14; Szamet Dec. at ¶ 19.)

The amount of the Net Settlement Fund is contingent on the number of Class Members, who completed Defendant's standard form purporting to authorize a consumer report verifying their background and experience, who remain in the Settlement Class. Id. at 12(d).  As of the date of this filing, there are 672 Class Members.  Based on this data and the anticipated Net Settlement Amount, the Parties anticipate the approximate payment per Class Member, who completed Defendant's standardized form, to be $47.31. (Szamet Dec. ¶ 21.)

As this is a non-reversionary, total payout Settlement, any funds remaining in the Global Settlement Fund due to uncashed Settlement checks (after a 180-day negotiability period) will be remitted to a charitable organization as agreed by the Parties, or, if they are unable to agree, to one designated by the Court. (Settlement at ¶12(l)).  (Szamet Dec. ¶ 22.)

C.    <u>The Release by Class Members</u>

The release applies only to Settlement Class Members who do not request

---

[3]    Class Counsel has incurred $960.32 in costs as of this filing. (Szamet Dec. ¶ 20.)

exclusion. As of the date of this filing only 5 individuals have requested exclusion. As such, the release applies to 672 Settlement Class Members.

Class Members will release Defendant and others as follows:

> Upon final approval by the Court of the Settlement, and except as to such rights or claims as may be created by the Settlement, each Class Member who has not submitted a timely and valid Request for Exclusion, and without the need to manually sign a release document, in exchange for the consideration recited in the Settlement, on behalf of himself or herself and on behalf of his/her current, former, and future heirs, executors, administrators, attorneys, agents, and assigns, shall, and does hereby, fully and finally release Defendant and the other Released Parties as defined in Paragraph 1, from any and all claims of any kind whatsoever, whether known or unknown, whether based on common law, regulations, statute, or a constitutional provision, under state, federal or local law, arising out of the claims pending in the Action and that reasonably arise, or could have arisen, out of the facts alleged in the Action as to the Class Members, including, but not limited to, claims arising from the procurement of a consumer report on them by any of the Released Parties, and any other claims for violations of the Fair Credit Reporting Act, 15 U.S.C. §1681b, et seq., whether willful, or otherwise, for declaratory relief, statutory damages, punitive damages, costs, and attorneys' fees. Notwithstanding the foregoing, nothing in the Settlement releases any claims that cannot be released as a matter of law.

*See* Settlement at ¶19.

### D.    The Settlement Administration Process

After the Court granted preliminary approval, the Parties and the Settlement Administrator carried out their duties in connection with administration of the Settlement as set forth in detail in the Settlement Agreement. (Szamet Dec. ¶ 23.)

The Court approved the proposed Class Notice (ECF No. 34, Ex. A [class notice]) and directed the mailing of the Notice to Class Members in accordance with

the Court's order and the Settlement Agreement. (*Id*; Szamet Dec. ¶ 24.)

The Settlement Administrator mailed notices to 677 Class Members on August 8, 2019. (Pavlik Dec. ¶11.)  Members of the Settlement Class had until October 7, 2019 to submit a valid request for exclusion or to object. (*Id*.)

Based on the declaration from the Settlement Administrator, there are zero (0) objections and five (5) requests for exclusion. (Pavlik Dec. ¶¶14-15.)  As of today, there are 672 Settlement Class Members.   The favorable reaction of the Class Members is positive and weights in favor of approval. (Szamet Dec. ¶ 25.)

## IV.    THE COURT SHOULD ORDER FINAL APPROVAL OF THE SETTLEMENT

A class action may not be dismissed, compromised or settled without court approval. Fed. R. Civ. P. ("FRCP") 23(e). "The purpose of Rule 23(e) is to protect the unnamed members of the class from unjust or unfair settlements affecting their rights." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008). At the same time, the law favors settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding the time, cost and rigors of formal litigation. *See* 4 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* § 11.41 (4th ed. 2002) (and cases cited therein); *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976).

On a motion for final approval of a class action settlement, the court inquires whether the settlement is "fair, adequate and reasonable," meaning that "the interests of the class are better served by the settlement than by further litigation." *Manual for Complex Litigation*, Fourth, § 21.6 at 309 (2004); *see also* Fed. R. Civ. Pro. 23(e)(1)(C); *Officers for Justice*, 688 F.2d 615, 625 (9th Cir. 1982). The fairness inquiry involves the balancing of several factors, including: (1) the strength of Plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the

amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; and (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004). Here, each of these factors weighs in favor of approving the current settlement.

### A.    The Strength of Plaintiff's Case

Plaintiff asserts two claims. First, Plaintiff alleges that Defendant included extraneous information in its standard background and experience application on members of the FCRA Classes. Second, Plaintiff alleges that Defendant failed to obtain proper authorization before obtaining a background check as a result of its allegedly unlawful disclosure form. (Szamet Decl. ¶ 26.)

Plaintiff alleges that Defendant violated the FCRA by including a liability waiver in its background check form on the same document that contained the disclosure and authorization permitting the background check. [4] *See Syed v. M-I, LLC*, 853 F.3d 492, 496 (9th Cir. 2017) ("We hold that a [defendant] violates Section 1681b(b)(2)(A) when it procures a[n] [individual's] consumer report after including a liability waiver in the same document as the statutorily mandated disclosure."). However, Plaintiff and his Counsel recognize that there are several significant risks to Plaintiff's claim, especially Plaintiff's ability to prove Article III standing. (Szamet Decl. ¶ 27.)

---

[4]    15 U.S.C. § 1681b(b)(2)(A) provides:

[A] person may not procure a consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless—
(i) a clear and conspicuous disclosure has been made in writing to the consumer at any time before the report is procured or caused to be procured, in a document that consists solely of the disclosure, that a consumer report may be obtained for employment purposes; ["Disclosure Requirement"] and (ii) the consumer has authorized in writing (which authorization may be made on the document referred to in clause (i)) the procurement of the report by that person. ["Authorization Requirement."]

8

Based upon estimates of the number of potential class members that Defendant provided during settlement negotiations, Plaintiff determined that maximum possible exposure for the FCRA claims arising under 15 U.S.C. § 1681(b)(2)(A)(i) and (ii) was $1,372,000 (686 class members x $2,000 per class member).[5]  (Szamet Decl. ¶ 28.)

The FCRA provides that "[a]ny person who willfully fails to comply with any requirement [of the Act] with respect to any [individual] is liable to that [individual]" for, among other things, either "actual damages" or statutory damages of $100 to $1,000 per violation, costs of the action and attorney's fees, and possibly punitive damages. *See* 15 U.S.C. § 1681n.  The valuation of the maximum exposure assumes: (1) statutory damages of $1,000 per violation; (2) the authorization requirement is not duplicative of the disclosure requirement; and (3) no punitive damages are awarded. (Szamet Decl. ¶ 29.)

However, there are certainly cognizable risks associated with Plaintiff's claims.   Class Counsel discounted the valuation of the FCRA claims due to Defendant's defenses to liability and certification. (Szamet Decl. ¶ 30.)  Importantly, Defendant contends that Plaintiff cannot prove Article III standing to assert his FCRA claims. (Szamet Decl. ¶ 31.) In *Spokeo, Inc. v. Robins*, the Supreme Court explained that "a bare procedural violation [of a statute], divorced from any concrete harm, cannot satisfy the injury-in-fact requirement of Article III." 136 S. Ct. 1540, 1548 (2016).   After *Syed*, 853 F.3d 492, district courts in the Ninth Circuit (and across the country) are split on whether 15 U.S.C. § 1681b(b)(2)(A) is merely procedural or creates substantive rights such as the right to information and privacy. If § 1681b(b)(2)(A) creates substantive rights, then a violation of this provision automatically creates a "concrete injury" for purposes of Article III standing. [6]

---

[5]  The actual number of class members was slightly lower that Defendant initially estimated.

[6]  *See Syed*, 853 F.3d at 499–500 ("Syed alleges more than a 'bare procedural

9

1    However, if § 1681b(b)(2)(A) is procedural, concrete injury requires factual

2    allegations that support a statutory violation *and* allow a court to infer *additional*

3    harm.[7]

4          In addition to the risk of whether § 1681b(b)(2)(A) is procedural or

5    substantive, Defendant also contended that Article III standing requires a court to

_____

violation.' The disclosure requirement at issue, 15 U.S.C. § 1681b(b)(2)(A)(i),
creates a right to information by requiring prospective employers to inform job
applicants that they intend to procure their consumer reports as part of the
employment application process. The authorization requirement, §
1681b(b)(2)(A)(ii), creates a right to privacy by enabling applicants to withhold
permission to obtain the report from the prospective employer, and [therefore] a
concrete injury when applicants are deprived of their ability to meaningfully
authorize the credit check."). Many district courts in the Ninth Circuit have
interpreted *Syed* in this manner. *See Demmings v. KKW Trucking, Inc.*, No. 14-
CV-494, 2017 WL 1170856, at *6–7 (D. Or. Mar. 29, 2017); *Terrell v. Costco
Wholesale Corp.*, No. C16–1415JLR, 2017 WL 951053, at *3 (W.D. Wash. Mar.
10, 2017); *Cunha v. IntelliCheck, LLC*, 254 F.Supp.3d 1124, 1130 (N.D. Cal.
May 26, 2017); *In re Ocwen Loan Servicing LLC Litig.*, No. 3:16–cv–00200–
MMD–WGC, 2017 WL 1289826, at *3–5 (D. Nev. Mar. 3, 2017); *Mix v. Asurion
Ins. Servs. Inc.*, No. CV-14-02357, 2016 WL 7229140, at *6 (D. Ariz. Dec. 14,
2016); *Meza v. Verizon Commc'ns, Inc.*, No. 1:16-CV-0739 AWI MJS, 2016 WL
4721475, at *3 (E.D. Cal. Sept. 9, 2016).

7    *See e.g., Groshek v. Time Warner Cable, Inc.*, 865 F.3d 884, 887 (7th Cir. 2017);
*Mitchell v. Winco Foods, LLC*, No. 1:16-CV-00076-BLW, 2017 WL 5349539,
at *2 (D. Idaho Nov. 13, 2017); *Bercut v. Michaels Stores Inc.*, No. 17-CV-
01830-PJH, 2017 WL 2807515, at *5 (N.D. Cal. June 29, 2017); *Saltzberg v.
Home Depot, U.S.A., Inc.*, No. CV1705798RGKAKX, 2017 WL 4776969, at *2
(C.D. Cal. Oct. 18, 2017); *In re Michaels Stores, Inc., Fair Credit Reporting Act
(FCRA) Litigation*, MDL No. 2615, 2017 WL 354023, at *7 (D.N.J. Jan. 24,
2017); *Dyson v. Sky Chefs, Inc.*, No. 3:16-CV-3155-B, 2017 WL 2618946, at *8–
9 (N.D. Tex. June 16, 2017); *Landrum v. Blackbird Enters., LLC*, 214 F. Supp.
3d 566 (S.D. Tex. 2016); *Fisher v. Enterprise Holdings, Inc.*, No. 15-CV-00372,
2016 WL 4665899 (E.D. Mo. Sept. 7, 2016); *Smith v. Ohio State Univ.*, 191 F.
Supp. 3d 750, 757 (S.D. Ohio 2016); *Shoots v. iQor Holdings US Inc.*, No. 15-
CV-563 (SRN/SER), 2016 WL 6090723, at *7 (D. Minn. Oct. 18, 2016);
*LaFollette v. RoBal, Inc.*, No. 1:16-CV- 2592-WSD, 2017 WL 1174020, at *3
(N.D. Ga. Mar. 30, 2017).

10

"fairly infer that [the plaintiff] was confused by the inclusion of the liability waiver with the disclosure **and** would not have signed it had it contained a sufficiently clear disclosure, as required in the statute." *Syed*, 853 F.3d at 499-500 (emphasis added). Plaintiff anticipated that Defendant would argue that, although Plaintiff alleges he was "confused" by Defendant's disclosure form, Plaintiff did not allege that he "would not have signed" the authorization form absent the liability waiver.  District courts go both ways on this issue.[8]  While Class Counsel is reasonably confident that they could prove Article III standing, Article III standing was certainly a contested issue between the Parties. (Szamet Decl. ¶ 32.)

Defendant also asserts that Plaintiff cannot show that Defendant's alleged violation of the FCRA was "willful" as required for recovery. *See* 15 U.S.C § 1681n(a)(1).  However, Plaintiff is confident it could prove willfulness. (Szamet Decl. ¶ 34.) *See Syed*, 853 F.3d at 502 ("We also hold that, in light of the clear statutory language that the disclosure document must consist 'solely' of the disclosure, a prospective employer's violation of the FCRA is 'willful' [as a matter of law] when the employer includes terms in addition to the disclosure, such as the liability waiver here, before procuring a consumer report or causing one to be procured.").

Defendant also argues that Plaintiff's claim for violating the FCRA's authorization requirement is duplicative of his first FCRA claim involving improper disclosure. *See Milbourne v. JRK Residential Am.*, LLC, No. 3:12CV861, 2016 WL 1071570, at *12 (E.D. Va. Mar. 15, 2016). (Szamet Decl. ¶ 35.)

With respect to class certification issue, Defendant contends the class definition is overbroad.  A class can only be certified if it is defined so that every class member has Article III standing. *See Mazza v. Am. Honda Motor Co.*, 666 F.3d

---

[8]  *Compare Mitchell v. Winco Foods, LLC*, No. 1:16-CV-00076-BLW, 2017 WL 5349539, at *2 (D. Idaho Nov. 13, 2017) *with Bercut v. Michaels Stores Inc.*, No. 17-CV-01830-PJH, 2017 WL 2807515, at 5* (N.D. Cal. June 29, 2017).

11

581, 594 (9th Cir. 2012) ("[N]o class may be certified that contains members lacking Article III standing."). Defendant contend that Plaintiff's Class is not limited to individuals who were confused by the inclusion of a liability waiver in the disclosure form and would not have signed an authorization but for its inclusion. (Szamet Decl. ¶ 36.)

Defendant would also contend that Plaintiff's Class goes back five years, but the FCRA provides two statutes of limitations-one of which only goes back two years-and mandates that each plaintiff be bound by "the earlier of" the two. 15 U.S.C. § 1681p. Defendant would certainly take the position that each proposed Class Member was necessarily aware of the alleged violation at the time he or she signed the background authorization form, and thus each Class Member who filled out a FCRA disclosure with a liability waiver more than two years before the filing of the complaint would thus be subject to a statute of limitations defense. Further, Defendant would argue that the applicability of an individualized statute of limitations defense-which requires a separate inquiry into when each class member subject to the defense personally discovered the alleged violation-means that a class action is not superior to other methods of adjudication. *See Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 320 (4th Cir. 2006) (where statute of limitations defense cannot be resolved on a class-wide basis, class certification is inappropriate). (Szamet Decl. ¶ 37.)

However, Plaintiff is reasonably confident that it could certify an FCRA class that goes back two (2) or five (5) years. Whether each class member had constructive notice of the violation is a common question that can be decided by the Court by looking solely at the allegedly invalid disclosure form. There is no need to depose each class member to determine their actual notice. *See In re Monumental Life Ins. Co.*, 365 F.3d 408, 421 (5th Cir. 2004), *cert. denied sub nom*, (holding that whether the policyholders had "constructive notice [of their cause of action] is an issue that can be decided on a classwide basis."). Moreover, certifying a class that

12

goes back five years must be possible, otherwise 15 U.S.C. § 1681p(2) would not encourage employers to comply with the FCRA. (Szamet Decl. ¶ 38.)

All of these risks required Class Counsel to significantly discount the value of the FCRA claims. (Szamet Decl. ¶ 39.)

B.    The Risk, Expense, Complexity, and Likely Duration of Further Litigation

In making the fairness determination, the Court may also weigh the risk, expense, and complexity of continued litigation against the certainty and immediacy of recovery from a settlement. *See Dunleavy v. Nadler (In re Mego Fin. Corp. Sec. Litig.),* 213 F.3d 454, 458 (9th Cir. 2000). "In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." 4 *Newberg on Class Actions* § 11.41 (4th ed. 2002 & Supp. 2008).

The "overriding public interest in settling and quieting litigation" is "particularly true in class action suits." *See Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976) (footnote omitted); see also *4 Newberg on Class Actions* § 11.41 (citing cases). This public policy favoring class action settlements applies with particular force here because the Settlement provides Class Members substantial, prompt, and efficient relief.

Given the risks outlined above, the issues in this case were complex and the risk for Plaintiff and the Class Members was high, given the many variables with uncertainty. (Szamet Decl. ¶ 40.)  There is significant expense associated with the class certification process, which the Parties can avoid by entering into the contemplated settlement. (Szamet Decl. ¶ 41.)  If the Court did eventually certify the class (other than for purposes of settlement as requested below), a class trial involving over 650 individuals would require the retention of expensive expert witnesses, the accrual of extensive litigation costs, and a significant time commitment by the parties. (Szamet Decl. ¶ 42.)  Finally, given the complexity and

13

unsettled nature of the issues in this case, it is likely that any outcome at trial would have resulted in a lengthy and costly appeal. (Szamet Decl. ¶ 43.)  An appeal would result in further delay for the Class Members, who are waiting for a resolution. *Id.*

### C.    The Risk of Maintaining Class Action Status Through Trial

A class has not been certified in this matter.  Class Counsel is reasonably confident that the Court would certify the proposed classes in this case based on the reasons set forth in section VI below. (Szamet Decl. ¶ 44.)  However, Class Counsel had to acknowledge the risks posed by Defendant's foregoing arguments. (Szamet Decl. ¶ 45.)  Furthermore, decertification is always a possibility. (Szamet Decl. ¶ 46.)

### D.    The Amount Offered in Settlement

It was difficult for the Parties to reach this Settlement. (Szamet Decl. ¶ 47.) The maximum potential value of all claims in this action amounted to $1,372,000. [9] (Szamet Decl. ¶ 48.)  However, given the foregoing risks, Plaintiff believes that the settlement amount of $55,000.00 is adequate, reasonable, and in the best interest of the Settlement Class. (Szamet Decl. ¶ 50.)

There are also risks and uncertainties with respect to damages.  In particular, Plaintiff seeks statutory damages under the FCRA ranging between $100 and $1,000 per violation.  Defendant would have certainly argued the alleged violations were technical, and thus did not result in any injuries or damages.  For example, in *Hillson v. Kelly Services*, E.D. Mich. No. 2:15cv10803, 2017 WL 279814, at *7-8 (E.D. Mich. Jan. 23, 2017), the court preliminarily approved a settlement awarding $19 to each class member for an alleged FCRA standalone disclosure violation.  In *Hillson*, the court assumed each individual class member would recover $100 at trial, and

---

[9]    (686 class members x $2,000 per class member).  This FCRA calculation assumes that the disclosure and authorization requirements are separate violations, and each violation results in the maximum $1,000 in statutory damages for a willful violation.  This assumes that no punitive damages are awarded. *See* 15 U.S.C. § 1681n(a). (Szamet Decl. ¶ 49.)

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

observed, "once the $100 award is discounted by the likelihood of success at trial (which is conceivably in the ballpark of 19%), the amount of recovery under the settlement appears reasonable." *Id.* at *7.

The adequacy of a class action settlement must be judged as "a yielding of absolutes and an abandoning of highest hopes ... . Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with litigation." *Officers for Justice*, 688 F.2d at 634 (citation omitted). The Settlement is not to be judged against a speculative measure of what may have been achieved. *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998). Moreover, determining the adequacy of the Settlement "involves a comparison of the relief granted relative to what class members might have obtained without using the class action process." *Manual for Complex Litigation* § 21.62. An additional consideration is that the Settlement provides for payment to now, rather than a payment many years down the road, if ever. *See City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974). Likewise, there was a high probability of drawn out litigation and risks the Settlement Class may not have prevailed. (Szamet Decl. ¶ 51.) For all of these reasons, the Court should preliminarily approve the Settlement.

Finally, the proposed Settlement is fair because the basis for recovery is the same for each Class Member. All individuals comprising the Settlement Class are eligible to receive individual payments from the Net Settlement Fund based upon the number of Class Members, and each Class member will be bound by the same release. (Szamet Decl. ¶ 52.)

E.    The Extent of Discovery Completed, and the Stage of the Proceedings

A class action settlement must be informed by sufficient discovery. *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1174 (S.D. Cal. 2007). When a settlement following sufficient discovery and genuine arms-length negotiation is

15

reached, the negotiation is presumed fair. *See Slezak v. City of Palo Alto*, 2017 WL 2688224, at *5 (N.D. Cal. June 22, 2017).

Here, discussions between counsel for the Parties, formal discovery, as well as the diligent investigation and evaluation of the claims of Plaintiff by the Parties, have permitted each side to assess the relative merits of the claims and the defenses to those claims. (Szamet Decl. ¶ 53.)  Specifically, Defendant formally produced Plaintiff's personnel file and the FCRA background check form that he signed. (Szamet Decl. ¶ 54.)  In addition, Defendant provided estimates of the number of proposed class members.  (Szamet Decl. ¶ 55.)

F.    The Experience and Views of Counsel

In reviewing the opinions of counsel, "great weight" is accorded to the recommendation of the attorneys. *In re Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Litig.*, 229 F. Supp. 3d 1052, 1067 (N.D. Cal. 2017).  They are the ones who are most closely acquainted with the facts of the underlying litigation. *Id.* "Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation." *Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995).  Thus, "the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel." *Nunez v. BAE Systems San Diego Ship Repair, Inc.*, 292 F. Supp. 3d 1018, 1040 (S.D. Cal. 2017).

In the present case, the Settlement was negotiated by experienced counsel, who believe that it is fair and reasonable, and in the Settlement Class's best interests. The firms of Kingsley & Kingsley APC and Davtyan Professional Law Corporation are well versed in class action litigation and have diligently and aggressively pursued this action. (Szamet Decl. ¶ 69.)  Kingsley & Kingsley has focused its practice since the year 2000 on prosecuting complex wage, hour, and working condition violations. (Szamet Decl. ¶¶70-71.)  Kingsley & Kingsley currently serves as class counsel for dozens of pending class action Actions in Northern, Central, and Southern

16

California. *Id.* A list of representative cases that Kingsley & Kingsley has handled is included in the accompanying declaration of Kelsey M. Szamet. *Id.* After factoring in the risks explained above, Class Counsel believes that the proposed Settlement is fair and reasonable.

G.    The Reaction of the Class Members to the Proposed Settlement

"The reactions of the members of a class to a proposed settlement is a proper consideration for the trial court." 5 *Moore's Fed. Practice* § 23.85[2][d] (Matthew Bender 3d ed.).

To date, there are only five (5) requests to be excluded from the proposed Settlement and zero (0) objections. (Pavlik Dec. ¶¶14-15.) Such indicates that the reaction of class members on the whole is positive and weighs in favor of approval. (Szamet Decl. ¶ 56.)

H.    The Parties Arrived at the Settlement Through Arm's Length Negotiations with the Assistance of a Respected Mediator

As noted by the Ninth Circuit, the eight listed factors analyzed above is "by no means an exhaustive list of relevant considerations." *Officers for Justice*, 688 F.2d at 625. As such, courts often inquire into the procedure by which the settlement was reached.

Here, the Settlement Agreement was reached after formal production of Plaintiff's personnel file, as well as an estimate of the number of FCRA class members. (Szamet Decl. ¶ 57.) Following formal discovery, the parties engaged in extensive arm's length negotiations. (Szamet Decl. ¶ 58.) This procedure weighs in favor of approving the settlement.

## V.    THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS

To facilitate the Settlement, the Parties respectfully ask the Court to conditionally certify the following Settlement Class under FRCP 23 (e):

> All individuals in the United States of America who filled out
> Defendant's Notice of Procurement of Consumer/Investigative
> Report Form permitting Defendant to obtain a consumer report

17

verifying applicants' background and experience during the Class
Period (namely, November 6, 2013 to March 1, 2019).[10]

Settlement at ¶¶ 1(f) and (x). The Parties agree, but only for purposes of the
Settlement, the criteria for certifying a settlement class are satisfied. *Settlement* at ¶
4; Szamet Dec. ¶ 59.

A.    All Four FRCP 23(a) Criteria are Met

**FRCP 23(a)(1): The class is so numerous that joinder of all members is
impracticable.** "As a general rule, classes numbering greater than forty individuals
satisfy the numerosity requirement." *Quintero v. Mulberry Thai Silks, Inc.*, No. 08-
2294, 28 I.E.R. Cas. (BNA) 607, 2008 U.S. Dist. LEXIS 84976, at *7 (N.D. Cal.
Oct. 22, 2008) (citation omitted). Here, 672 individuals comprise the Settlement
Class. *Settlement* at § 12(d). (Szamet Decl. ¶ 60.) Consequently, numerosity is easily
satisfied. (Szamet Decl. ¶ 61.)

**FRCP 23(a)(2): There are questions of law or fact common to the Class.**
The commonality requirement is liberally construed. *Alberto v. GMRI, Inc.*, 252
F.R.D. at 660 (citation omitted); *see also Hanlon v. Chrysler Corp.*, 150 F.3d 1011,
1019 (9th Cir. 1998) (concluding Rule 23(a)(2) is "permissively" construed). The
class' claims must share substantial issues of law or fact, but need not be identical.
*Quintero*, 2008 U.S. Dist. LEXIS 84976, at *8. Either "shared legal issues with

---

[10] Under the FCRA, claims must be filed within the earlier of (1) "2 years after the
date of discovery by the plaintiff of the violation that is the basis" for the FCRA
claim, or (2) "5 years after the date on which the violation that is the basis for
such liability occurs," without respect to the plaintiff's knowledge of the
violation. 15 U.S.C. §§1681p (1)-(2). A plaintiff discovers facts giving rise to a
claim when he or she learns the defendant procured a background report after
using an allegedly deficient disclosure form. *Wirt v. Bon-Ton Stores, Inc.*, 134 F.
Supp.3d 852, 858–59 (M.D. Pa. 2015); *see also Milbourne v. JRK Residential
Am., LLC*, No. 3:12CV861, 2016 WL 1071569, at *6 (E.D. Va. Mar. 15, 2016);
*Moore v. Rite Aid Headquarters Corp.*, No. 13–1515, 2015 WL 3444227, at *8
(E.D. Pa May 29, 2015). Here, the Class Period is premised upon the broader 5-
year statute of limitations.

1    divergent factual predicates" or "a common core of salient facts coupled with

2    disparate legal remedies within the class" suffices. *Hanlon*, 150 F.3d at 1019.

3        Under the FCRA, an employer, or prospective employer, cannot "procure, or

4    cause a consumer report to be procured, for employment purposes with respect to

5    any consumer unless ... a clear and conspicuous disclosure has been made in writing

6    to the consumer at any time before the report is procured or caused to be procured,

7    in a document that consists solely of the disclosure, that a consumer report may be

8    obtained for employment purposes." 15 U.S.C. § 1681b(b)(2)(A)(i). Here, the

9    Settlement Class is all individuals who, between November 6, 2013 and March 1,

10   2019, in connection with their application for employment with Defendant,

11   completed Defendant's standard form purporting to authorize a consumer report

12   verifying their background and experience. (Szamet Decl. ¶ 62.) Based on these

13   common factual and legal issues, the Parties submit sufficient commonality exists.

14   (Szamet Decl. ¶ 63.)

15       **FRCP 23(a)(3): Plaintiffs claims are typical of the class' claims.** As with

16   commonality, the typicality standard is "permissive[ly]" applied. *See Staton v.*

17   *Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003) (quoting *Hanlon*, 150 F.3d at 1020).

18   More specifically, it is satisfied when a class representative's claim is "reasonably

19   coextensive with those of absent class members; they need not be substantially

20   identical." *Id.*

21       In 2013, Defendant employed Plaintiff as a security consultant at its California

22   facility. (ECF No. 1, ¶9) Plaintiff alleges, during Defendant's application process,

23   he filled out a standard disclosure and authorization form that allowed Defendant to

24   obtain a consumer report verifying his background and experience for Defendant.

25   (ECF No. 1, ¶24.; Szamet Decl. ¶ 64.) Plaintiff further alleges the standardized form

26   was not merely a disclosure; it also included a liability release stating: "I hereby

27   release Solutionary, Inc., and any and all persons, business entities and governmental

28   agencies, whether public or private, from any and all liability, claims and/or

19

demands, of whatever kind, to me, my heirs or others making such claim or demand on my behalf, for procuring, selling, providing, brokering and/or assisting with the compilation or preparation of the consumer report and/or investigative consumer report hereby authorized." (Szamet Decl. ¶ 65.)  According to Plaintiff, Defendant required all applicants to complete the same form that violated the FCRA's prohibition against including extraneous information in a required disclosure. (ECF No. 1, ¶¶26-27.)  Although Defendant does not admit these allegations, for purposes of approving this Settlement, Defendant does not oppose Plaintiff's assertion sufficient typicality exists. (Szamet Decl. ¶ 66.)

**FRCP 23(a)(4): Plaintiff and Class Counsel will fairly and adequately protect the class' interests.** Courts have interpreted this requirement as posing two questions: whether the class representative and her counsel (1) have conflicts of interest with putative class members, and (2) will vigorously prosecute the action on behalf of the class. *See id.* (citing *Hanlon* and other cases).  Plaintiff and Class Counsel do not have interests antagonistic to those of the Settlement Class.  To the contrary, Plaintiff shares the same interest-*i.e.*, recovering damages resulting from alleged violations of Defendant's FCRA obligations.  Moreover, Class Counsel have extensive experience prosecuting similar such class actions. Szamet Dec. ¶¶69-71. Kingsley & Kingsley is experienced in prosecuting and defending employment litigation, and the firm has focused its practice since 2000 on complex litigation including wage and hour and consumer class action. (Id.)  Kingsley & Kingsley currently serves as class counsel for dozens of pending class actions in Northern, Central, and Southern California. (Id.)  A list of representative cases that Kingsley & Kingsley has handled is included in the accompanying declaration of Kelsey M. Szamet.  Thus, Plaintiff and Class Counsel are adequate representatives for the Class.  The firm has diligently and aggressively pursued this action.  After factoring in the risks discussed herein, Class Counsel believes that the proposed Settlement is fair and reasonable.

B.    The FRCP 23(b)(3) Criteria are Met

To certify a class under FRCP 23(b)(3), a court must find (1) common questions of fact or law predominate over questions affecting individual members of the proposed class, and (2) a class action is a superior method for fairly and efficiently adjudicating the controversy. FRCP 23(b)(3). The Settlement easily meets these criteria.

**The predominance requirement is met.** Predominance "focuses on the relationship between the common and individual issues.  When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Local Joint Executive Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 (9th Cir), *cert. denied*, 534 U.S. 973,122 S. Ct. 395 (2001) ("Local Joint Executive Bd.") (quoting *Hanlon*, 150 F.3d at 1022).

Predominance is readily met because, as in numerous other class actions, Plaintiff's claim is premised in his allegation Defendant maintained a uniform policy of providing the Settlement Class with a standardized form facially violating the FCRA. (ECF No. 1, ¶¶38-39; Szamet Decl. ¶ 67.)  Plaintiff's claim is based on factual and legal questions about Defendant's policy that are not only common to the Settlement Class, but predominate under FRCP 23 (e).  These aspects of the case strongly support a finding that the predominance requirement is satisfied. *See, e.g., In re Wells Fargo Home Mortgage Overtime Pay Litig.*, 527 F. Supp.2d 1053, 1068 (N.D. Cal. 2007); *In re Wells Fargo Home Mortg. Overtime Pay Litigation*, 571 F.3d 953, 958 (C.A.9 2009).

**Superiority is met.** Whether a class action is a superior method of adjudicating a controversy involves a "comparative evaluation of alternative mechanisms of dispute resolution." *Hanlon*, 150 F.3d at 1023.  The circumstances here are comparable with those involving the Las Vegas Sands' former casino

21

employees who sought damages for their employer's failure to provide a statutorily required 60-day notice before closure.  When affirming the district court's approval of a class action settlement, the Ninth Circuit stated:

> This case involves multiple claims, some for relatively small individual sums. Counsel for the would-be class estimated that, under the most optimistic scenario, each class members would recover about $1,330. If plaintiffs cannot proceed as a class, some - perhaps most - will be unable to proceed as individuals because of the disparity between their litigation costs and what they hope to achieve.

*Local Joint Executive Bd.*, 244 F.3d at 1163 ("Class actions ... may permit the plaintiffs to pool claims which would be uneconomical to litigate individually.") (*citing Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809, (1985).  In such a situation, superiority is "easily satisfied." *Id*. For purposes of approving the Settlement, the Parties submit superiority is equally satisfied. (Szamet Decl. ¶ 68.)

## VI.    CONCLUSION

The Settlement is fair and reasonable and all of the requirements for final approval are met.  Plaintiff therefore requests that the Court grant this motion and enter an order: (1) granting Final approval of the Settlement; (2) certifying the Settlement Class; (3) awarding class representative payment of $1,000.00 to the Named Plaintiff; (4) awarding attorneys' fees and costs in the amount detailed in the concurrently filed Motion for Attorneys' Fees and Costs; (5) awarding $7,500 to Rust Consulting, Inc. for administration; and (6) entering judgment in the case.

DATED: November 4, 2019          KINGSLEY & KINGSLEY, APC

By:_____
KELSEY M. SZAMET
Attorneys for Plaintiff WILLIAM CAPUT
and the Class

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF