UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 18-9436 PA (GJSx) | Date | December 9, 2019 |
|---|---|---|---|
| Title | William Caput, et al. v. NTT Security (US) Inc. | | |

| Present: The Honorable | PERCY ANDERSON, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Kamilla Sali-Suleyman | N/A | N/A |
| Deputy Clerk | Court Reporter | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None | None |

**Proceedings:**   IN CHAMBERS - COURT ORDER

Before the Court is a Motion for Final Approval of Class Settlement filed by Plaintiff William Caput ("Plaintiff") and Defendant NTT Security (US) Inc. ("Defendant") (jointly the "Parties") (Dkt. No. 39) and a Motion for Attorney Fees and Costs filed by Plaintiff (Dkt No. 39-1). Defendant does not oppose Plaintiff's Motion for Attorney Fees and Costs.

**I.   FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff filed this action on November 6, 2018 on behalf of himself and other individuals employed by Defendant who were required to fill out a Notice of Procurement of Consumer/Investigative Report form. That form allowed Defendant to obtain a consumer report to verify the individual's background and experience. (Dkt. No. 1 ("Compl.") ¶¶ 1-6, 24-34.) Plaintiff alleges Defendant violated the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681b et seq., by failing to adequately disclose that Defendant would be seeking a consumer report and failing to obtain authorization to do so. (Id. ¶¶ 9-12, 18-33.)

Plaintiff asserts two causes of action under the FCRA. (Id. ¶¶ 53-64.) Plaintiff also asserted an unrelated cause of action under the California Labor Code, but that cause of action was later dismissed. (Id. ¶¶ 36, 40, 65-69; see Dkt Nos. 13, 17, 18, 20.) Defendant filed an Answer on December 12, 2018. (Dkt No. 15.) On February 7, 2019, Plaintiff filed a notice stating the parties had settled. (Dkt. No. 27.) Plaintiff then filed an unopposed Motion for Preliminary Approval of Class Settlement on March 18, 2019, which this Court granted on April 19, 2019. (Dkt No. 34.)

The Parties now move for final approval of the Settlement Agreement. The Parties ask the Court to: (1) grant final approval of the settlement pursuant to the terms of the Settlement Agreement; (2) certify the proposed settlement class, and (3) enter judgment. (Dkt. No. 39 at 1.) In addition, Plaintiff asks the Court to award attorneys' fees and costs, a class representative payment to Plaintiff William Caput, and administrative costs to Rust Consulting, Inc. (Dkt. No. 39-1.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 18-9436 PA (GJSx) | Date | December 9, 2019 |
| Title | William Caput, et al. v. NTT Security (US) Inc. | | |

**II.   FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

    **A.   Class Certification for Settlement Purposes**

The parties request that the Court certify a settlement class under Federal Rule of Civil Procedure ("Rule") 23(b)(3) comprised of:

> all individuals in the United States of America who filled out Defendant's Notice of Procurement of Consumer/Investigative Report Form permitting Defendant to obtain a consumer report verifying applicants' background and experience during the Class Period.

(Dkt. No. 39 at 4; Settlement Agreement ¶ 1(x) (the "Settlement Class").)  The "Class Period" is defined as November 6, 2013 to March 1, 2019.  (Id.; Settlement Agreement ¶ 1(f).)  The Settlement Class includes 672 individuals.  (Id. at 4; L. Pavlik Decl. ¶¶ 9, 14.)

To obtain class certification, the Parties must demonstrate that the proposed Settlement Class meets the four requirements of Rule 23(a) and the two requirements of Rule 23(b)(3).  See Dukes v. Wal-Mart Stores, Inc., 603 F.3d 571, 580 (9th Cir. 2010), rev'd on other grounds, 564 U.S. 338 (2011).  Rule 23(a) requires the Court to find that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.  Fed. R. Civ. P. 23(a).  In addition, Rule 23(b)(3) requires the Court to find that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.  Fed. R. Civ. P. 23(b)(3).  Rule 23 "provides district courts with broad discretion to determine whether a class should be certified, and to revisit that certification throughout the legal proceedings before the court."  Armstrong v. Davis, 275 F.3d 849, 871 n.28 (9th Cir. 2001).

Where, as here, the Parties have reached a Settlement Agreement prior to class certification, "the court must pay undiluted, even heightened, attention to class certification requirements because, unlike in a fully litigated class action suit, the court will not have future opportunities to adjust the class, informed by the proceedings as they unfold."  Alberto v. GMRI, Inc., 252 F.R.D. 652, 658 (E.D. Cal. 2008) (internal quotation marks omitted) (quoting Amchem Prods. Inc. v. Windsor, 521 U.S. 591, 620 (1997).  "The parties cannot 'agree to certify a class that clearly leaves any one requirement unfulfilled,' and consequently the court cannot blindly rely on the fact that the parties have stipulated that a class exists for purposes of settlement."  Id. (quoting Berry v. Baca, 01-CV-02069, 2005 WL 1030248, at *7 (C.D. Cal. May 2, 2005); see also Amchem Prods., 521 U.S. at 622 (observing that Rule 23 does not permit class certification simply because a settlement appears fair).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| Case No. | CV 18-9436 PA (GJSx) | Date | December 9, 2019 |
|---|---|---|---|
| Title | William Caput, et al. v. NTT Security (US) Inc. | | |

**1.    Rule 23(a) Requirements**

Rule 23(a) establishes four prerequisites for class action litigation: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. To obtain class certification, "actual, not presumed, conformance with Rule 23(a) [is] . . . indispensable," and the Court conducts a "rigorous analysis" to ensure these requirements are satisfied. Gen. Tel. Co. of the Sw. v. Falcon, 457 U.S. 147 (1982). This rigorous analysis "does not mean that a district court must conduct a full-blown trial on the merits prior to certification. A district court's analysis will often, though not always, require looking behind the pleadings, even to issues overlapping with the merits of the underlying claims." Dukes, 603 F.3d at 581. Thus, while a court at the class certification stage is prohibited from making determinations on the merits that do not overlap with the Rule 23 inquiry, district courts must make determinations that each requirement of Rule 23 is actually met. Id. at 582. Plaintiff must demonstrate to the Court's satisfaction, and not merely allege, that the suit is appropriate for class resolution. See id.

   a.    Numerosity

A proposed class meets Rule 23(a)'s numerosity requirement where the class is so numerous that joinder of all members individually is "impracticable." Fed R. Civ. P. 23(a)(1). "No exact numerical cut-off is required; rather, the specific facts of each case must be considered." In re Cooper Cos. Inc. Sec. Litig., 254 F.R.D. 628, 634 (C.D. Cal. 2009) (citing Gen. Tel. Co. of Nw., Inc. v. EEOC, 446 U.S. 318, 330 (1980)).

Here, 672 individuals comprise the Settlement Class. (Dkt. No. 39 at 18; Szamet Decl. ¶ 60.) The Court therefore finds that prosecution and joinder of individual claims would be impracticable. See, e.g., Shelton v. Hal Hays Constr., Inc., 16-CV-00360, 2017 WL 1439683, at *3 (C.D. Cal. Jan. 25, 2017) (numerosity requirement satisfied in similar FCRA case with 360 class members). Accordingly, in light of the size of the Settlement Class, the Court finds the numerosity requirement is met.

   b.    Commonality

The commonality requirement is met if "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The commonality requirement is construed "permissively." Hanlon, 150 F.3d at 1019. All questions of fact and law need not be common; rather, "[t]he existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." Id. Commonality requires that the claims of a named plaintiff and all putative class members "depend upon a common contention . . . of such a nature that it is capable of class-wide resolution - which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Dukes, 564 U.S. at 350. "For the commonality requirement to be met, there must only be one single issue common to the proposed class." Haley v. Medtronic, 169 F.R.D. 643, 648 (C.D. Cal. 1996).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 18-9436 PA (GJSx) | Date | December 9, 2019 |
| Title | William Caput, et al. v. NTT Security (US) Inc. | | |

Here, Plaintiff's allegations involve questions of law and fact common to all class members, as Defendant allegedly violated the FCRA with the Notice of Procurement of Consumer/Investigative Report form that was issued to all members of the Settlement Class. See, e.g., Syed v. M-I LLC, 14-CV-00742, 2019 WL 1130469, at *3 (E.D. Cal. Mar. 12, 2019) (commonality requirement satisfied in similar case); Esomonu v. Omnicare, Inc., 15-CV-02003, 2018 WL 3995854, at *3 (N.D. Cal. Aug. 21, 2018) (same). Accordingly, the Court finds that the commonality requirement is met.

   c.  <u>Typicality</u>

Typicality requires that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Representative claims are "typical" if they are "reasonably co-extensive with those of absent class members; they need not be substantially identical." Hanlon, 150 F.3d at 1020. Class representatives "must be able to pursue [their] claims under the same legal or remedial theories as the represented class members." In re Paxil Litig., 212 F.R.D. 539, 549 (C.D. Cal. 2003) (citing Kennedy v. Unumprovident Corp., 50 F. App'x 354 (9th Cir. 2002)). The Ninth Circuit has established that the "purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir. 1992). Thus, "class certification should not be granted if there is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it." Id.

Plaintiff's and Settlement Class members' claims all are based on Defendant's Notice of Procurement of Consumer/Investigative Report form, which allegedly violates the FCRA. Plaintiff's claims thus are typical of the claims of Settlement Class. See Syed, 2019 WL 1130469, at *4; Esomonu, 2018 WL 3995854, at *3. Accordingly, the Court finds that the typicality requirement is met.

   d.  <u>Adequacy of Representation</u>

Rule 23(a) also requires that the representative parties be able to "fairly and adequately protect the interests of the class." Representation is adequate if the named plaintiff (1) does "not have conflicts of interest with the proposed class" and (2) the class is "represented by qualified and competent counsel." Dukes, 603 F.3d at 614.

Here, counsel appears to be qualified and competent, as they have substantial experience prosecuting consumer and employment class actions. (Dkt. No. 39 at 20; K. Szamet Decl. ¶¶ 66-71.) Further, Plaintiff does not appear to have any conflicts of interest, as his claims arise out of the same set of facts as the proposed class members' claims and his interest in obtaining a favorable resolution is shared with the class members.

The Court previously expressed some concern that named Plaintiff William Caput is seeking a $1,000 service award, while class members are estimated to receive approximately $47.31 each. (See Dkt. No. 34.) The Ninth Circuit has determined that such awards can raise concern that the named plaintiff will put his interests before those of the class, but that incentive awards can still be proper under

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| Case No. | CV 18-9436 PA (GJSx) | Date | December 9, 2019 |
|---|---|---|---|
| Title | William Caput, et al. v. NTT Security (US) Inc. | | |

the circumstances. See Staton v. Boeing Co., 327 F.3d 938, 977 (9th Cir. 2003). The Court requested that the Parties provide more factually specific support for Plaintiff William Caput's service award at the final approval of the class settlement. (Dkt. No. 34.)

Plaintiff's Motion for Attorney Fees notes that William Caput "spent a lot of time researching competent counsel before bringing this lawsuit." (Dkt. No. 39-1; K. Szamet Decl. ¶ 121, W. Caput Decl. ¶ 5.) "Once the lawsuit was filed, he helped gather relevant employment documents in his possession." (Id.; K. Szamet Decl. ¶ 122; W. Caput Decl. ¶ 5.) Further, he "had several conferences with [c]lass [c]ounsel to share information, discuss the status of the case, and regularly checked in about the case's progress." (Id.; K. Szamet Decl. ¶ 123; W. Caput Decl. ¶ 6.) Further, the notice sent to the class "disclosed the enhancement award," and as of the filing of this Motion, "no class member has objected to the proposed enhancement." (Id.; K. Szamet Decl. ¶ 125.) Under these circumstances, the Court finds that a representative payment of $1,000 to representative Plaintiff William Caput does not suggest that he put his interests before those of the class. See, e.g., In re Online DVD-Rental Antitrust Litig., 779 F.3d 934, 943 (9th Cir. 2015) (upholding district court's incentive award to representative plaintiff of $5,000 where additional class members received $12 each, finding "incentive awards that are intended to compensate class representatives for work undertaken on behalf of a class are fairly typical in class action cases," and "incentive payments to class representatives do not, by themselves, create an impermissible conflict between class members and their representatives."); Wren v. RGIS Inventory Specialists, 06-CV-05778, 2011 WL 1230826, at *34 (N.D. Cal. Apr. 1, 2011) (finding service award of $5,000 to representative plaintiffs reasonable where plaintiffs were, "in constant communication with class counsel to discuss the progress of the case and provide additional factual information"). Accordingly, the Court finds that Plaintiff William Caput's interest in obtaining a favorable resolution is shared with the class members, and that Plaintiff William Caput was an adequate class representative.

In light of the foregoing, the Court finds the prerequisites of Rule 23(a) satisfied.

    **2.    Rule 23(b)(3) Requirements**

Rule 23(b)(3) requires the Court to find that: (1) "the questions of law or fact common to class members predominate over any questions affecting only individual members," and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." The predominance inquiry tests "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." Hanlon, 150 F.3d at 1022 (quoting Amchem Prods., 521 U.S. at 623). This analysis requires more than proof of common issues of law or fact. Id. Rather, the common questions must "present a significant aspect of the case [that] can be resolved for all members of the class in a single adjudication." See id. (quoting 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 1778 (2d ed.1986)). The superiority inquiry requires determination of "whether the objectives of the particular class action procedure will be achieved in the particular case." Id. at 1023. Notably, the class action method is considered to be superior if "classwide litigation of common issues will reduce litigation costs and promote greater efficiency." Valentino v. Carter-Wallace, Inc., 97 F.3d 1227, 1234 (9th Cir. 1996).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| Case No. | CV 18-9436 PA (GJSx) | Date | December 9, 2019 |
|---|---|---|---|
| Title | William Caput, et al. v. NTT Security (US) Inc. | | |

The predominant question of law or fact at issue here is whether Defendant's Notice of Procurement of Consumer/Investigative Report form violated the FCRA. The Court therefore finds that the predominance requirement is satisfied. See Syed, 2019 WL 1130469, at *5; Esomonu, 2018 WL 3995854, at *3.

Moreover, the large number of putative class members and the commonality of the issues presented render a class action the superior method of adjudication of this case. Because of the small size of the putative class members' potential individual monetary recovery, class certification may be the only feasible means for class members to adjudicate their claims. See Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc., 244 F.3d 1152, 1163 (9th Cir. 2001) ("If plaintiffs cannot proceed as a class, some—perhaps most—will be unable to proceed as individuals because of the disparity between their litigation costs and what they hope to recover."); see also, Syed, 2019 WL 1130469, at *6.

In light of the foregoing, the Court finds each requirement for certification of the Settlement Class pursuant to Rule 23(b)(3) satisfied. Accordingly, the Court hereby certifies, for settlement purposes only, the Settlement Class as defined in the Settlement Agreement.

### B.      Fairness of the Class Settlement

Rule 23(e) requires a district court to determine whether a proposed class action settlement is "fundamentally fair, adequate, and reasonable." Staton, 327 F.3d at 959 (quoting Hanlon, 150 F.3d at 1026). To make this determination, the Court considers a number of factors, including: (1) the strength of Plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. Id. "In addition, the settlement may not be the product of collusion among the negotiating parties." In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 458 (9th Cir. 2000) (citing Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1290 (9th Cir. 1992)). "[T]he court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product or fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." Hanlon, 150 F.3d at 1027. The Ninth Circuit has declared that a strong judicial policy favors settlement of class actions. Class Plaintiffs, 955 F.2d at 1276.

#### 1.      The Amount Offered in the Settlement Agreement

The Settlement Agreement includes a settlement fund of $55,000. (Settlement Agreement ¶¶ 10, 12(c), (k).) From this fund, Plaintiff's counsel seeks an award of attorneys' fees of 25% of the fund, or $13,750, and reimbursement of litigation expenses of $960.32. (Dkt. No. 39-1 at 5; Settlement Agreement ¶¶ 12(c), 14; K. Szamat Decl. ¶ 19) See Adoma v. Univ. of Phx., Inc., 913 F. Supp. 2d 964,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 18-9436 PA (GJSx) | Date | December 9, 2019 |
|---|---|---|---|
| Title | William Caput, et al. v. NTT Security (US) Inc. | | |

981 (E.D. Cal. 2012) (noting that in applying the percentage-of-recovery method, "courts typically set a benchmark of 25% of the fund as a reasonable fee award, and justify any increase or decrease from this amount based on circumstances in the record" (citing Six (6) Mexican Workers v. Ariz. Citrus Growers, 904 F.2d 1301, 1311 (9th Cir. 1990))).  Additionally, Plaintiff seeks a $1,000 service award for his participation in this litigation.  (Id.; K. Szamet Decl. ¶¶ 12, 65; Settlement Agreement ¶ 12(c), (h).)  Finally, $7,500 of the fund will be used for settlement administration fees.  (Id.; Szamet Decl. ¶¶ 12, 15; Settlement Agreement ¶¶ 12(c), 13.)  Participating class members will receive equal shares of the $31,789.68 remaining in the settlement fund after those deductions are made.  (Id.; K. Szamet Decl. ¶¶ 16-18; Settlement Agreement ¶ 12(d).)  Since there are 672 class members receiving distributions, each member would receive $47.31.  (Id.)

The Parties contend that the settlement amount is reasonable considering the Parties' disputes over, among other things, whether the alleged violations were merely technical and did not result in any injury or damages, and whether some class members' claims would be barred by the statute of limitations.  (Id. 10-15; K. Szamet Decl. ¶¶ 39-51.)  In light of the risks that Plaintiff and the Settlement Class members face, the Court finds the settlement amount reasonable under the circumstances.  See Bravo v. Gale Triangle, Inc., 16-CV-03347, 2017 WL 708766, at *10 (C.D. Cal. Feb. 16, 2017) (approving settlement where net recovery to class members was approximately 7.5% of the projected maximum recovery amount).  The Court therefore finds that the amount offered in the Settlement Agreement weighs in favor of final approval.

  **2.  The Strength of Plaintiff's Case; the Risk of Maintaining Class Action Status Throughout the Trial; the Risk, Expense, Complexity, and Likely Duration of Further Litigation; and the Extent of Discovery Completed and the Stage of the Proceedings**

"When evaluating the strength of a case, the Court should evaluate objectively the strengths and weaknesses inherent in the litigation and the impact of those considerations on the parties' decisions to reach these agreements."  De Santos v. Jaco Oil Co., No. 1:14-cv-0738, 2015 U.S. Dist. LEXIS 93410, at *16 (E.D. Cal. July 17, 2015).  Plaintiff and counsel claim that "discussions between counsel for the Parties, formal discovery, as well as the diligent investigation and evaluation of the claims of Plaintiff by the Parties, have permitted each side to assess the relative merits of the claims and the defenses of those claims.  (Mot. at 16.)  They contend that Plaintiff and the Settlement Class would face serious risks if litigation were to continue based on Defendant's various defenses, and they would risk significant delay.  (Id. at 10, 16.)  It appears that the parties have spent a significant amount of time considering the issues and facts in this case and are in a position to determine whether settlement is a viable alternative.  The Court therefore finds that these factors favor granting final approval of the Settlement Agreement.

  **3.  The Experience and Views of Counsel**

The Court finds that counsel have had sufficient experience with employment and consumer class action litigation to appropriately assess the legal and factual issues in this matter and determine

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| Case No. | CV 18-9436 PA (GJSx) | Date | December 9, 2019 |
|---|---|---|---|
| Title | William Caput, et al. v. NTT Security (US) Inc. | | |

whether the Settlement Agreement serves the interests of the Settlement Class members. (See Dkt. No. 39 at 16, 19; K. Szamet Decl. ¶¶ 54-58, 66.) Counsel's belief that the Settlement Agreement is both fair and adequate also weighs in favor of final approval.

    **4.    Collusion Between the Parties**

To determine whether there has been any collusion between the parties, courts must evaluate whether "fees and relief provisions clearly suggest the possibility that class interests gave way to self-interest," thereby raising the possibility that the settlement agreement is the result of overt misconduct by the negotiators or improper incentives for certain class members at the expense of others. Staton, 327 F.3d at 961.

Here, there is no evidence of overt misconduct. On the contrary, it appears that the Settlement Agreement was the product of informed, arms-length negotiations between the parties. (See Mot. at 15-16; Szamet Decl. ¶¶ 52-53, 56-58.) The Settlement Agreement is the product of significant negotiations between the parties. Further, as already discussed, Plaintiff's requested service award is not improper. The Court therefore finds that the Settlement Agreement is the product of non-collusive negotiations.

    **5.    Reaction of Class Members to Settlement**

Where a settlement agreement enjoys overwhelming support from the class, this lends weight to a finding that the settlement agreement is fair, adequate, and reasonable. Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc., 221 F.R.D. 523, 529 (C.D. Cal. 2004) ("It is established that the absence of a large number of objections to the proposed class action settlement raises a strong presumption that the terms of the proposed class settlement action are favorable to the class members."); see also Boyd v. Bechtel Corp., 485 F. Supp. 610, 624 (N.D. Cal. 1979) (finding that objections from only 16 percent of the class was persuasive that the settlement was adequate). The Settlement Class was provided notice of the Settlement Agreement pursuant to this Court's order granting the motion for preliminary approval. (Dkt. No. 34.) There have only been five requests to be excluded from the proposed settlement, and zero objections. (Dkt. No. 39 at 17.)

In light of the foregoing, the Court finds that the Settlement Agreement is fair, reasonable, and adequate. The Court therefore grants final approval of the proposed Settlement Agreement.

    **C.    Adequacy of Notice to the Settlement Class**

Under Rule 23(e), this Court must "direct notice in a reasonable manner to all class members who would be bound by the proposal." Such notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Klee v. Nissan N. Am., Inc., 12-CV-08238, 2015 WL 4538426, at *5 (C.D. Cal. July 7, 2015). The notice given in this case was reasonably calculated to reach the members of the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| Case No. | CV 18-9436 PA (GJSx) | Date | December 9, 2019 |
|---|---|---|---|
| Title | William Caput, et al. v. NTT Security (US) Inc. | | |

class. After the Court granted preliminary approval, the Parties and Rust Consulting, Inc. (the "Settlement Administrator") carried out their duties in connection with administration of the settlement as set forth in the Settlement Agreement. (Dkt. No. 39 at 6, K. Szamet Decl. ¶ 23.) Notice was sent through first class United States mail, and any notices that were returned as undeliverable were traced up to two times to obtain a new address for re-mailing. The Settlement Administrator mailed notices to 677 class members on August 8, 2019. (Id. at 7; Pavlik Dec. ¶ 11.) Members of the Settlement Class had until October 7, 2019 to submit a valid request for exclusion or objection. (Id.) As of the date of the filing of this Motion, there are 672 class members, and 5 requests for exclusion. The Court therefore concludes that the notice procedures satisfied the requirements of Due Process and Rule 23(e).

### III. ATTORNEYS' FEES AND LITIGATION EXPENSES

#### A. Attorneys' Fees

The Court is obligated to conduct a careful review of the reasonableness of requested attorneys' fees and costs. See In re Wash Pub. Power Supply Sys. Sec. Litig., 19 F.3d 1291, 1302 (9th Cir. 1994) ("Because in common fund cases the relationship between plaintiffs and their attorneys turns adversarial at the fee-setting stage, courts have stressed that when awarding attorneys' fees from a common fund, the district court must assume the role of fiduciary for the class plaintiffs."). Plaintiff's counsel seeks $13,750 in attorneys' fees. (Dkt. No. 39-1 at 3.) This constitutes 25% of the gross settlement amount created by the Settlement Agreement. In common fund cases, "where the settlement or award creates a large fund for distribution to the class, the district court has discretion to use either a percentage or lodestar method." Hanlon v. Chrysler Corp., 150 F.3d 1011, 1029 (9th Cir. 1998). "The percentage method means that the court simply awards the attorney a percentage of the fund sufficient to provide class counsel with a reasonable fee." Id. The Ninth Circuit as established 25% of the common fund "as a benchmark award for attorney fees." Id. "The 25% benchmark rate, although a starting point for analysis, may be inappropriate in some cases. Selection of a benchmark or any other rate must be supported by findings that take into account all of the circumstances of the case." Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1048 (9th Cir. 2002).

"The lodestar method can confirm that a percentage of recovery amount does not award counsel an exorbitant hourly rate ." In re Bluetooth Headset Prods. Liab. Litig., 654 F.3d 935, 945 (9th Cir. 2011). Here, three attorneys spent 83.9 hours on this litigation, resulting in lodestar fees through the present of $35,897.50. (Dkt. No. 39-1; K. Szamet Decl. ¶ 87.) The first attorney is a partner who has been practicing since 1996. (Id. ¶ 97.) He has a rate of $750 per hour, and has spent 4 hours on this case. (Id. ¶ 104.) The second attorney is an associate who has been practicing since 2008. (Id. ¶ 98.) She has a rate of $500 per hour, and spent 39.6 hours on this case. (Id. ¶ 104.) The third attorney is an associate who has been practicing since 2016. (Id. ¶ 101.) He has a billing rate of $325 per hour, and spent 40.3 hours on this case. (Id. ¶ 104.) The lodestar calculation would be $35,897.50, which is more than 2.5 times more than the attorneys' fee award requested by class counsel.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 18-9436 PA (GJSx) | Date | December 9, 2019 |
|---|---|---|---|
| Title | William Caput, et al. v. NTT Security (US) Inc. | | |

Considering the results achieved, the time expended, the risk of litigation, the skill required, the quality of work, the contingent nature of the fee, the financial burden carried by class counsel, and awards made in similar cases, as well as the lack of Settlement Class objection to the requested fee award, the Court finds that the requested attorneys' fee award is reasonable. The Court therefore grants Plaintiff's counsel's request for $13,750 in attorneys' fees, to be awarded from the settlement amount.

### B. Litigation Costs

Plaintiff's counsel requests $960.32 in litigation costs. (Dkt. 39-1 at 8.) "Reasonable costs and expenses incurred by an attorney who creates or preserves a common fund are reimbursed proportionately by those class members who benefit by the settlement." In re Media Vision Tech. Sec. Litig., 913 F. Supp. 1362, 1366 (N.D. Cal. 1996). However, an expense that should be considered part of the attorneys' overhead, and therefore included within an award of attorneys' fees, should not be characterized as a litigation expense and recovered as a cost item. Id. ("An award of out-of-pocket expenses should be limited to those expenses customarily billed to a fee-paying client.") Class counsel filed a declaration itemizing the costs sought as follows: $475.00 in filing fees; $216.35 for call services; $223.03 for research; and $45.94 in postage and copies. (K. Szamack Decl. ¶ 118, Ex. E.) The Settlement Class was notified that litigation costs of up to $1,200 could be awarded to class counsel, and no class member objected. The Court concludes that the requested costs are reasonable, and awards class counsel $960.32 from the settlement amount for litigation costs.

### C. Administration Award

Plaintiff seeks final approval of administration costs of $7,500. A Senior Project Manager for the Settlement Administrator, Rust Consulting, Inc., has provided a declaration in which she identifies the services Rust Consulting, Inc. provided in this case. (L. Pavlik Decl. ¶ 3.) She further attests that Rust Consulting, Inc. incurred $7,500 in costs performing its duties in this case. (Id. ¶ 16.) The Court finds these administration costs reasonable and awards Rust Consulting, Inc. $7,500 from the settlement amount to cover administration costs incurred.

### D. Plaintiff's Incentive Award

Finally, Plaintiff requests that he be awarded an incentive award of $1,000. Class representatives are eligible for reasonable incentive payments. See Staton, 327 F.3d at 977; Rodriguez v. W. Publ'g Corp., 563 F.3d 948, 958–59 (9th Cir. 2009). However, the district court must evaluate such awards individually to detect "excessive payments to named class members" that may indicate that "the agreement was reached through fraud or collusion." Id. at 975; Radcliffe v. Experian Info. Sols., Inc., 715 F.3d 1157, 1164 (9th Cir. 2013) ("We once again reiterate that district courts must be vigilant in scrutinizing all incentive awards to determine whether they destroy the adequacy of the class representatives."). Courts may consider the following criteria in determining whether to make an incentive award: (1) the risk to the class representative in commencing suit, both financial and otherwise; (2) the notoriety and personal difficulties encountered by the class representative; (3) the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 18-9436 PA (GJSx) | Date | December 9, 2019 |
|---|---|---|---|
| Title | William Caput, et al. v. NTT Security (US) Inc. | | |

amount of time and effort spent by the class representative; (4) the duration of the litigation; and (5) the personal benefit enjoyed by the class representative as a result of the litigation. Van Vraken v. Atl. Richfield Co., 901 F. Supp. 294, 299 (N.D. Cal. 1995). To assess whether an incentive payment is excessive, district courts balance "the number of named plaintiffs receiving incentive payments, the proportion of the payments relative to the settlement amount, and the size of each payment." Staton, 327 F.3d at 975.

An award of $1,000 constitutes 1.8% of the total settlement amount and is approximately 10 times larger than the award that members of the Settlement Class will receive. Here, Plaintiff has been involved in the litigation of this dispute and settlement negotiations since seeking counsel over one year ago. Plaintiff attests that he has "actively participated in all stages of the litigation," including having several telephone conferences with his attorneys, reviewing and signing the final Settlement Agreement, and discussing next steps with his attorneys. (W. Caput Decl. ¶¶ 4-9.) Based on these facts, the Court finds an incentive award of $1,000 reasonable.

## Conclusion

For the foregoing reasons, the Court finds that the Settlement Agreement is fundamentally fair, adequate and reasonable. The Court therefore grants the Parties Motion for Final Approval of Settlement. The Court also grants Plaintiff's Motion for Attorneys' Fees, and awards $13,750.00 in attorneys' fees to class counsel, $960.32 in costs to class counsel, $7,500.00 in administration costs to Rust Consulting, Inc., and a $1,000 incentive award to Plaintiff William Caput. The Court will enter a judgment consistent with this Order and Settlement Agreement.

IT IS SO ORDERED.